UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TAYLOR THOMPSON,

      Plaintiff,

v.                                Case No. 3:14cv217/MCR/CJK

SILVER BEACH TOWERS PROPERTY
OWNERS ASSOCIATION, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Taylor Thompson, who is proceeding *pro se*, filed this action against his former employer, Silver Beach Towers Property Owners Association, Inc., asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-12117, 12203;  Florida Workers' Compensation Law, § 440.105, Fla. Stat.; and Florida's Private Sector Whistleblower Act ("Whistleblower Act"), §§ 448.101-448.105, Fla. Stat.  Plaintiff claims he is a qualified individual with a disability based on a back injury he sustained at work.   According to plaintiff, defendant discriminated against him by "denying [he] was injured on the job" and requiring him to terminate the assistant manager upon whom he relied to perform his job duties following his injury.  Plaintiff also asserts he was terminated in retaliation for filing a workers' compensation claim and reporting alleged Occupational Safety and Health Administration ("OSHA") violations in violation of Florida's Workers' Compensation Law and the Whistleblower Act, respectively.  Defendant has filed a

motion for summary judgment (doc. 49), arguing there is no genuine issue of material fact with regard to any of plaintiff's claims and it is entitled to summary judgment as a matter of law.   Having carefully considered the motion and response, the undersigned recommends defendant's motion for summary judgment be granted.

## FACTS

Defendant is the master association for two high-rise condominiums located in Destin, Florida.  Doc. 1 at pg. 2.  Defendant hired plaintiff as its Beach Operations Manager on or about June 26, 2011.  *Id.*  As Beach Operations Manager, plaintiff's responsibilities included "ensuring the beach was set up and broken down on a daily basis, collect[ing] daily revenue, reservations, scheduling [] employees, and payroll." Doc. 49-2 at pg. 3.  Plaintiff claims to have been injured on the job on June 16, 2012 "while carrying chairs on the beach."  Doc. 49 at pg. 7.  Specifically, plaintiff claims he had a "torn disc" in his back.  Doc. 49-2 at pg. 12.   He filed a workers' compensation claim two days after the injury.  Doc. 1 at pg. 3.   He also sought treatment for the injury and was allowed to return to work on light duty with certain restrictions.[1]  Doc. 1 at pg. 2.  After the restrictions were imposed, plaintiff required assistance performing his job.  Doc. 49-4 at pg. 3.  To that end, he relied on the assistant manager, Brandon Kortum, until Kortum was terminated on December 10, 2012.  *Id.*

Shortly after Kortum's termination, on December 19, 2012, Steven Chamberlain, the association manager, and Steve Odom, a member of the association's board of directors, made an unannounced visit to plaintiff's work site.

---

[1] Plaintiff was restricted from "lift[ing] extremely heavy things, bend[ing], squat[ting], and kneel[ing]."  Doc. 49 at pg. 8.

Doc. 49 at pg. 2. Chamberlain and Odom found thirty-two empty beer cans and a partially empty bottle of liquor in the warehouse. *Id.* Plaintiff admitted the beer cans and liquor bottle were his and explained he was given permission to store personal items on the premises. Doc. 49-2 at pg. 5. Chamberlain and Odom interviewed Kortum regarding the incident, and Kortum admitted consuming alcohol with plaintiff on the job site. Doc. 49 at pg. 2. Based on its discovery of the beer cans and liquor bottle, as well as Kortum's admission, defendant terminated plaintiff's employment.[2] Doc. 49 at pg. 1.

After he was terminated, plaintiff began working for Gilligan's Watersports and Harbor Watersports as a "dock hand" and "deck hand." Doc. 49-2 at pg. 14. Plaintiff's duties included "rent[ing] out pontoons and wave runners to people on dolphin tours and serving as a deck hand on a para sailboat." *Id.* Despite the nature of his subsequent employment, plaintiff claims his condition improved only minimally; he acknowledges, however, that he has not pursued further medical treatment. Doc. 49-2 at pg. 15. On May 7, 2014, plaintiff filed a charge of discrimination and retaliation.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute

---

[2] Plaintiff denies he consumed alcohol on defendant's premises. According to defendant, however, when initially questioned about the beer cans and liquor bottle, plaintiff admitted to consuming alcohol on the premises.

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.*  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts." *Jeffrey v. Sarasora White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir. 1995). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir. 1993).  A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fat and thereby preclude summary judgment. *Walker v. Darby* 911 F.2d 1573, 1577 (11th Cir. 1990).  Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).

<u>DISCUSSION</u>

A.  Discrimination claim

"The ADA prohibits employers from discriminating against persons with disabilities." *Dulaney v. Miami-Dade Cnty.*, No. 11-12585, 2012 WL 2037724, at *2 (11th Cir. Jun. 6, 2012).  Claims of discrimination under the ADA may be proved through direct evidence or circumstantial evidence.  Direct evidence is "evidence which, if believed, would prove the existence of a fact [in issue] *without inference or presumption.*" *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (internal marks omitted) (emphasis in original).  In this case, plaintiff has no direct evidence of discrimination; instead, he relies wholly on circumstantial evidence to support his claim.  The court, therefore, must consider plaintiff's claim under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  *See Smith v. Miami-Dade Cnty.*, No. 14-12566, 2015 WL 3635417, at *3 (11th Cir. June 12, 2015) ("The burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), used in Title VII employment-discrimination claims, also applies to ADA claims.").

Under this framework, the plaintiff has the burden to establish a *prima facie* case of discrimination by demonstrating that he (1) has a disability; (2) is qualified for the job, with or without reasonable accommodations; and (3) was unlawfully discriminated against because of his disability. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356-57 (11th Cir. 2004) (*citing* 42 U.S.C. § 12112(a)).  "The ADA defines 'disability' to include: '(A) a physical or mental impairment that substantially limits

one or more of the major life activities of such individual;[3] (B) a record of such impairment; or (C) being regarded as having such an impairment.'" *Id.* at 1357 (quoting 42 U.S.C. § 12102(2)). "Essential to either claim, according [to] EEOC regulations, is a showing that [the] plaintiff was 'significantly restricted in the ability to perform either a *class of jobs or a broad range of jobs* in various classes as compared to the average person having comparable training, skills and abilities.'" *Id.* at 1359 (*quoting* 29 C.F.R. § 1630.2(j)(3)(i) (emphasis in original)). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* "Thus, an impairment must preclude—or at least be perceived to preclude—an individual from more than one type of job, even if the job foreclosed is the individual's job of choice." *Id.*

If the plaintiff establishes a *prima facie* case of discrimination, a rebuttable presumption arises that the employer unlawfully discriminated against him and the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Brooks v. Cnty. Com'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). A trier of fact does not have to believe the employer's proffered reason in order to find the employer has met its burden, "[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993). Nor is an employer required to persuade the court its reason is "legitimate." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). The employer is required only to

---

[3] "The EEOC defines th[e] phrase ['substantially limits'] to mean "'significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity.'" *Id.* at 1357 (*quoting* 29 C.F.R. § 1630.2(j)(1)).

present evidence which, taken as true, permits a reasonable factfinder to conclude there was a nondiscriminatory reason for the employment decision. *St. Mary's Honor Center*, 509 U.S. at 509; *Cooper*, 390 F.3d at 725.

Once the presumption is rebutted, the plaintiff must show the employer's reason was not the genuine cause for the adverse action but merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. A plaintiff can do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks*, 446 F.3d at 1163 (internal marks omitted). With respect to the latter, "the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Cooper*, 390 F.3d at 725 (internal marks omitted). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). The ultimate burden remains with the plaintiff to raise a genuine issue of material fact as to whether the employer's explanation is pretextual and discrimination was the true cause for the employment decision.

Here, plaintiff cannot establish a *prima facie* case of disability discrimination. Indeed, plaintiff has failed to demonstrate he is disabled. Plaintiff claims he is disabled because of a back injury that precludes him from performing his job without assistance. The Eleventh Circuit has "recognized that an impairment that substantially impairs a plaintiff's ability to work is a major life activity." *Hollins v. Fulton Cnty.*, 422 F. App'x. 828, 832 (11th Cir. 2011). "But where a plaintiff alleges

that the major life activity impaired is working, the plaintiff must allege that [he] is unable to work in a broad class of jobs." *Id.* "That is because '[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'" *Id.* (internal marks omitted; *quoting* 29 C.F.R. § 1630.2(j)(3)(I)). Although plaintiff's injury may have precluded him from performing his job with defendant, there is no indication the injury rendered him unable to perform a broad class of jobs. In fact, shortly after he was terminated, he worked as a dock hand and deck hand, a fact that defeats his claim of disability.

Plaintiff also has failed to show he is a qualified individual. Under the ADA, a "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual held or desires." *Woodruff v. Sch. Bd. of Seminole Cnty., Fla.*, 304 F. App'x 795, 799 (11th Cir. 2008) (*quoting* 42 U.S.C. § 12111(8)). "A qualified individual is unlawfully discriminated against if the employer does not reasonably accommodate the disability." *Id.* (*citing* 42 U.S.C. § 12112(b)(5)(A)). Reasonable accommodation includes "'[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.'" *Webb v. Donley*, 347 F. App'x 443, 445-46 (11th Cir. 2009) (*quoting* 29 C.F.R. § 1630.2(o)(1)(ii)). "Essential functions are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Toland v. AT&T*, No. 11-12592, 2012 WL 3832724, at *1 (11th Cir. Sept. 4, 2012). "Whether a particular job duty is an essential function is evaluated on a case-by-case basis," with

"substantial weight [given] to the employer's judgment as to what functions of a position are essential." *Id.* "A job function . . . may be essential if there are a limited number of employees among whom performance of the job can be distributed." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)

The employee bears the burden both of identifying an accommodation and demonstrating its reasonableness. *Id.* at 1367.  Thus, "before an employer has a duty to show undue hardship, the plaintiff first must show that a reasonable accommodation exists." *Id.*  The Eleventh Circuit has held "an employer is not required [under the ADA] to accommodate an employee in any manner in which that employee desires" and is not "required . . . to reallocate job duties in order to change the essential functions of a job." *Id.* (internal marks omitted).  In this instance, plaintiff has failed to show an accommodation, short of assigning a number of his job duties to another employee, an act that surely would have changed the essential functions of the job, that would have enabled him to perform his job.  Plaintiff's ADA discrimination claim thus fails as a matter of law.

B.     Retaliation claims

1.     Workers' compensation claim

Pursuant to § 440.205, Fla. Stat., "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."  Workers' compensation retaliation claims brought under § 440.205 are analyzed under the same framework as Title VII retaliation claims.  *See, e.g., Andrews v. Direct Mail Exp., Inc.*, 1 So. 3d 1192, 1193-94 (Fla. 5th DCA 2009).  Accordingly, to establish a *prima facie* case of retaliation under § 440.205, a plaintiff

must show (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment decision. *See Little v. United Techs, Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997). If a plaintiff establishes a *prima facie* case of retaliation, the defendant must proffer a legitimate, non-retaliatory reason for the adverse employment action. If the defendant does so, in order to prevail, the plaintiff must prove by a preponderance of the evidence that defendant's articulated reason is a pretext for unlawful retaliation. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). Again, to show pretext, plaintiff must offer evidence showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal marks omitted). "Mere speculation of a discriminatory motive is insufficient." *Turner v. Inzer*, No. 4:11cv567-RS-WCS, 2012 WL 4458341, at *5 (N.D. Fla. Sept. 26, 2012) (*citing Edwards v. Acadia Realty Trust, Inc.*, 141 F. Supp. 2d 1340, 1346-47 (M.D. Fla. 2001)); *see also Brown v. Progress Energy*, 364 F. App'x 556, 558 (11th Cir. 2010).

It is undisputed that plaintiff engaged in protected activity–filing for workers' compensation benefits. It also is undisputed that plaintiff suffered an adverse employment action–termination. Plaintiff, however, has failed to show the termination was because of the protected activity. "To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (internal marks omitted). Plaintiff has made no such showing.

Indeed, plaintiff acknowledges he possessed alcohol on the job site and the proffered reason for his termination was that fact, along with defendant's belief he drank on the job.  And he has adduced no evidence those were not the real reasons for his termination and that he instead was terminated in retaliation for filing a workers compensation claim.  Moreover, plaintiff was employed by defendant for more than five months after being injured and receiving workers' compensation benefits.  That undisputed fact undermines any claim of causation or pretext as to plaintiff's workers' compensation retaliation claim.  Finally, even if plaintiff had established a *prima facie* case of workers' compensation retaliation, defendant has offered a legitimate, non-discriminatory reason for the termination, which plaintiff has wholly failed to rebut.

2.    Reporting of alleged OSHA violations

Florida's Private Sector Whistleblower Act prohibits employers from retaliating against employees who object to or refuse to participate in any activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. *See* § 448.102(3), Fla. Stat.  As with workers' compensation retaliation claims, courts have applied the Title VII burden-shifting framework in analyzing Florida Whistleblower Act claims.  *See Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1367-68 (S.D. Fla. 2002) ("In analyzing Florida private and public sector whistleblower actions, courts apply the same standard that is used for Title VII retaliation claims"); *Bell v. Ga.-Pac. Corp.*, 390 F. Supp. 2d 1182, 1187 (M.D. Fla. 2005), *aff'd*, 153 F. App'x 701 (11th Cir. 2005) (retaliation claims under the private Florida Whistleblower Act are analyzed in the same manner as Title VII retaliation claims).  It is undisputed that plaintiff engaged in protected activity in objecting to

or refusing to participate in alleged OSHA violations.  It also is undisputed that plaintiff suffered an adverse employment action when he was terminated.  For the reasons set forth above, however, plaintiff has failed to show he was terminated because he engaged in protected activity.

To the extent plaintiff relies on the temporal proximity of his objecting to or refusing to participate in alleged OSHA violations and his termination, such reliance is insufficient to avoid summary judgment.  "Close temporal proximity between the protected activity and the adverse employment action can show that the two events were not wholly unrelated."  *Fla. Dep't of Children and Families v. Shapiro*, 68 So. 3d 298, 306 (4th DCA 2011) (*citing Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).[4]  According to the Eleventh Circuit, however, "mere temporal proximity, without more, must be 'very close.'"  *Thomas*, 506 F.3d at 1364 (*quoting Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."  *Id*.  "If there is a substantial delay between the two events, the plaintiff must present other evidence tending to show causation."  *Shapiro*, 68 So. 3d at 1364. In other words, "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."  *Thomas*, 506 F.3d at 1364.

According to the undisputed evidence, plaintiff objected to or refused to participate in alleged OSHA violations in late 2011 and again a year later, on August

---

[4] Florida courts look to federal courts' interpretation of temporal proximity in other forms of retaliation claims in evaluating temporal proximity with respect to Florida's whistleblower statute. *See id.*

22, 2012.  He was terminated on December 22, 2012.[5]  The fact plaintiff remained employed with defendant for four months after he objected to or refused to participate in OSHA violations undermines his retaliation claim, particularly in the absence of any other evidence of retaliation.  Moreover, even if plaintiff had established a *prima facie* case of whistleblower retaliation, defendant has offered a legitimate, non-discriminatory reason for his termination, which plaintiff has not rebutted.  As with the previously discussed claims, this claim may not be submitted to a jury, because a verdict for plaintiff could only be based upon speculation, not evidence.

<u>CONCLUSION</u>

Based upon the foregoing, it is respectfully **RECOMMENDED** that defendant's motion for summary judgment (doc. 49) be **GRANTED** and this matter dismissed with prejudice.

At Pensacola, Florida this 8th day of December, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] Plaintiff did not notify OSHA of the violations until after he was terminated.  Plaintiff's reporting alleged violations directly to OSHA, therefore, cannot be the basis of any retaliation claim.

Case No. 3:14cv217/MCR/CJK

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

Case No. 3:14cv217/MCR/CJK